**STANDARD ACC. INS. CO. v. HUDDLES-TON et al.**

No. 31.

District Court, M. D. Tennessee, N. E. D.

Aug. 3, 1943.

Reber Boult, of Nashville, Tenn., for plaintiff Standard Acc. Ins. Co.

W. Keith Crawford, Co. Atty., and Elmer Langford, both of Cookeville, Tenn., for defendants B. C. Huddleston and Putnam County.

H. B. McGinness, of Carthage, Tenn., and Holladay, Clark & Bullington, of Cookeville, Tenn., for defendant First Nat. Bank of Cookeville, Tenn.

Elmer Langford, of Cookeville, Tenn., for defendant R. T. Rhea, County Trustee: Alfred T. Adams and J. Olin White, both of Nashville, Tenn., and Haile & Harris and W. L. Swallows, all of Cookeville, Tenn., for various defendant "materialmen".

DAVIES, District Judge.

The cause was submitted upon the pleadings, evidence, exhibits, argument and briefs of counsel for plaintiff and defendants, and after due consideration thereof, the Court enters its findings of fact and conclusions of law as follows:

### Findings.

1. All parties, complainant and defendant, are properly identified in the pleadings, are sui juris, and have filed proper pleadings herein to put this case at issue upon the merits.

2. By contract dated October 3, 1939, defendant Putnam County, acting by its County Judge the defendant, B. C. Huddleston, thereunto duly authorized, agreed with West & Reed, contractors, upon the terms for the construction of certain school buildings, and repairs to existing school buildings, all in Putnam County, being designated in the written contract as sub-projects Nos. 6 to 12, inclusive. The County, as owner, agreed to pay the contractor the sum of Twenty-five Thousand Eight Hundred Twenty-eight and 90/100 Dollars ($25,828.90), "for the performance of the contract".

Progress payments were provided for upon a basis of 90% of the value of labor and materials in the work or stored at the site. In connection with such payments the contract provided in part: "The contractor shall submit to the architect an application for each payment and, if required, receipts or other vouchers showing his payments for materials and labor, including payments to the sub-contractors, as required by Article 37. * * * This schedule, when approved by the architect shall be used as a basis for certificates of payment, unless it be found to be in error."

The contract further provides, in part:

"Owner's Right to Withhold Certain Amounts and Make Application Thereof:"

"If evidence is produced before the final settlement of all or any balances that the contractor has failed to pay laborers employed on his work or failed to pay for the materials used therein, or if the owner has reason to suspect the same, the owner may withhold such balances, and upon evidence satisfactory to the owner as to the amount due for such labor or materials the owner, acting as the agent of the contractor, may settle and pay for the same, and charge the amounts to the contractor and deduct the same from the said balance or balances."

The contract further provided:

"Assignment:"

"The contractor shall not assign this contract or any part hereof, or any moneys due or to become due hereunder, without the approval of the owner, nor without the consent of the surety unless the surety has waived its right to notice of assignment."

Said contract further provides, under the heading, "Acceptance and Final Payment" as follows:

"Final payment shall be due thirty (30) days after substantial completion of the work provided the work be then fully completed and the contract fully performed.

"Upon receipt of written notice that the work is ready for final inspection and acceptance, the architect shall promptly make such inspection and when he finds the work acceptable under the contract, and contract fully performed, he shall promptly issue a final certificate, over his own signature, stating that the work provided for in this contract has been completed and is accepted by him, under the terms and conditions thereof and that the entire balance found to be due the contractor and noted in said final certificate is due and payable.

"Before issuance of final certificate the contractor shall submit evidence satisfactory to the architect that all payrolls, material bills, and other indebtedness connected with the work have been paid."

3. The said contract and contract documents filed in this case as complainant's Exhibit No. 1 contain the legal notice to bidders, over the signatures of defendant Putnam County and defendant B. C. Huddleston, County Judge, and require, in part: "The successful bidder will be required to execute a performance bond covering and including labor and materials in the amount of 100% of the contract price."

The contract further requires, under its general conditions:

"Contract Security or Performance Bond:"

"The contractor shall furnish a surety bond executed by a surety company duly authorized to do business in the State of Ten-

nessee in an amount at least equal to 100 per cent of the contract price as security for the faithful performance of this contract· and for the payment of all persons performing labor and furnishing materials in connection with this contract."

4. Said construction project was in part financed by a grant from the Public Works Administration of the United States Government and in part was financed by a Bond Issue authorized by defendant Putnam County. The contract was designated as "PWA Docket No. Tenn.-1288–F; Sub-Projects Nos. 6 to 12, inclusive." Marr & Holman of Nashville, Tennessee, were engaged by said County as Supervising Architects.

5. Pursuant to the above requirement of the defendant Putnam County and its officials, the contractor made application to complainant for a performance bond in the penalty of Twenty-five Thousand Eight Hundred Twenty-eight and 90/100 Dollars ($25,828.90) to secure the completion of said Projects; and also to "assure and protect all laborers and furnishers of material on said work". Said application, which is in evidence in this cause as complainant's Exhibit No. 1, reads, in part, as follows: "In further consideration of the execution of said bond, the undersigned does hereby agree, as of this date, that the said Standard Accident Insurance Company, shall as surety on said bond, be subrogated to all rights, privileges and properties of the undersigned as principal and otherwise in said contract, and does hereby assign, transfer and convey to said Company all the deferred payments and retained percentages, and any and all moneys and properties that may be due and payable at the time of such breach or default, or that may thereafter become due and payable to said undersigned on account of said contract, or on account of extra work and materials supplied in connection therewith, hereby agreeing that all such moneys and the proceeds of such payments and properties, shall be the sole property of the said Standard Accident Insurance Company, and to be by it credited upon any loan, cost, damage, charge and expense sustained, or incurred by it as above under its bond of suretyship."

Pursuant to the terms of said application and in consideration of the protection offered the surety under the terms of said contract, the complainant executed its performance bond upon the form drawn and prescribed by the Public Works Administration. Said original bond is a part of the contract documents (complainant's Exhibit No. 1), and two paragraphs from said bond read as follows:

. "But the Condition of the Foregoing Obligation or Bond Is This:"

"Whereas, the owner has engaged the said contractor for the sum of $25,828.90 to construct school buildings annd alterations and repairs to existing school buildings for Putnam County, Tennessee, Sub-Projects Nos. 6 to 12, inclusive, as more fully appears in a written agreement or contract bearing date of October 3, 1939, a copy of which said agreement or contract is by reference hereby made a part hereof, and it is the desire of the said owner that the said contractor shall assure all undertakings under said agreement or contract, and shall assure and protect all laborers and furnishers of material on said work both as provided by Chapter 182 of the Acts of the General Assembly of Tennessee of 1899, and any and all amendments thereto, including, without being limited to, Chapter 121 of the Public Acts of 1923 and Chapter 121 of the Public Acts of 1925, all of which were codified and re-enacted in Sections 7955 to 7959, inclusive, of the Code of Tennessee of 1932, and also independently of said Statutes.

"Now therefore, if the said contractor shall fully and faithfully perform all undertakings and obligations under the said agreement or contract hereinbefore referred to and shall fully indemnify and save harmless the said owner from all costs and damage whatsoever which it may suffer by reason of any failure on the part of said contractor so to do, and shall fully re-imburse and repay the said owner any and all outlay and expense which it may incur in making good any such default, and shall fully pay for all of the labor, material and work used by said contractor or any immediate or remote contractor or furnisher of material under him in the performance of said contract, in lawful money of the United States, as the same shall become due, then this obligation or bond shall be null and void, otherwise to remain full force and effect."

6. The contractor, West & Reed, entered upon the performance of said contract, under the supervision of Marr & Holman, Architects, and the resident PWA Engineer. Progress payments were made from time to time to said contractor, as contem-

plated by said contract, all of such progress payments being made by defendant Putnam County to the contractor upon the basis of Contractor's Claim filled out on "PWA Form No. I–23" which said form required the signature of the contractor, the signature of the architect, and the signature of the PWA Resident Engineer Inspector.

Prior to the execution of the West & Reed contract, the defendant Putnam County, through its same County Officials, had made a contract with another general contractor, which was handled in the same routine, progress payments being made to the contractor upon authority of the architect and PWA Engineer, as contained on said PWA Form I–23 and the final retainage payment being made to said other general contractor upon the authority of the architect, and the PWA Engineer, contained upon the same form.

7. Said sub-projects did not each require the same time for completion and the exact time of completion of work by the contractor is not clear but it is probable that the major portion of the work on all of the sub-projects had been completed by the first part of April, 1940.

8. During the first part of April, or shortly before the first of April, defendant B. C. Huddleston, County Judge, approached Mr. D. C. Wilhite, President of the First National Bank of Cookeville, and told him that the County had a Building Program on hand and that the Government had advanced some funds in connection with other funds put up by the County and that the contract had been completed and turned over and that the County owed the contractor, West & Reed, about $3,000, and did not have the money to pay them and wanted the Bank to accommodate them in some way so that the money could be advanced to West & Reed until the County got its money from the Government, at which time the accommodation would be taken care of. Accordingly, after having several such conversations the Bank had its attorney to prepare an Assignment, which was the method adopted in handling this accommodation. The Assignment was signed by West & Reed and service of the Assignment was acknowledged by Judge Huddleston, as Chairman of the County Board, and by Mr. J. H. Roberson, as County Trustee.

Defendant County Judge Huddleston says, relative to the testimony of Mr. Wilhite in this respect, that he does not remember exactly the terms of the conversation with Mr. Wilhite, but he does not deny it, and the most pertinent evidence in this respect is the evidence contained in the Assignment itself, which is dated April 3, 1940, just a short time after these conversations were taking place and it is recited in this Assignment: "Whereas, the First National Bank of Cookeville, Tennessee, has agreed to assist Putnam County, Tennessee, in the financing of this Project by paying to West & Reed the amounts now owing them, which amount is $3,050.88, and collecting same from Putnam County when the funds have been received from the Federal Government." This is substantially exactly what Mr. Wilhite testified and it is not denied by Judge Huddleston, other than to say he does not remember what the conversation was, and this document was signed by him and no protest was made by him at the time the Assignment was read over to him. As between the Bank and the County, under these circumstances, the Court finds that the accommodation in this case was as much for the benefit of the County as it was for the contractor.

Said Assignment of April 3, 1940 (complainant's Exhibit No. 12), also provides in part: "Whereas, West & Reed, contractors of Hartsville, Tennessee, have been engaged for the past few months in the building and repairing of certain school buildings in and for Putnam County, Tennessee, under Docket No. Tenn. 1288-F."

The attorney for the Bank who prepared this Assignment testified that he did not see the contract between the County and the contractor. However, the above quotations from the Assignment itself are sufficient to indicate the existence of a construction contract between the contractor and the County, under a specific Docket Number and which was financed, in part, by the Federal Government. It would also necessarily follow that labor and materials would have been furnished to the contractor in the performance of such a contract.

9. Upon the date of the execution of this Assignment the contractor had not submitted his final retainage claim to the County and the County had not received the final certificate of the architect, as approved by PWA Engineer Inspector.

10. On April 29, 1940, the contractor executed claim for final payment of retainage on each sub-project. It was necessary for this final claim to either affirmatively state that there were no creditors or to list

such creditors on said final claim. This claim for final payment was certified by the architects as of April 30, 1940. It was certified by the PWA Resident Engineer Inspector on May 21, 1940. Upon each such final certificate of claim the contractor listed as unpaid, one or more furnishers of material, in accordance with the requirements of the following wording of the certificate (all on the same PWA Form I–23):

"I further certify that all claims outstanding against West & Reed for labor, materials and expendable equipment employed in the performance of said contract have been paid in full, in accordance with the requirements of said contract, except such outstanding claims as are listed below."

On sub-project #6 (Buffalo Valley School) the amount claimed was $318.36. The creditor listed was "balance due Phillips & Buttorff Mfg. Co., for furnace on sub-project #6, $198.00."

On sub-project #7 (Gentry School), the amount claimed was $253.45. The creditor listed was "balance due Cookeville Planing Mills $186.38".

On sub-project #8 (Midway School), the amount claimed was $499.16. The creditor listed was "Balance due W. G. Bush for brick on sub-project #8, $182.00".

On sub-project #9 (Shipley School), the amount claimed was $404.70. The creditor listed was "Balance due W. G. Bush for brick on sub-project #9, $182.00".

On sub-project #10 (Silver Point School), the amount claimed was $330.80. The creditor listed was "Balance due W. G. Bush for brick on sub-project #10, $183.-27".

On sub-project #11 (Monterey School), the amount claimed was $1,042.44. The creditors listed were

"Balance due Keith-Simmons for paint $289.13
"Balance due Cookeville Sand & Gravel Co. $250.00
"Balance due Cookeville Planing Mills $300.00"

On sub-project #12 (Baxter School), the amount claimed was $301.97. The creditors listed were—

"Balance due Cookeville Sand & Gravel Co. $164.32
"Balance due Cookeville Planing Mills $115.00"

The creditors named above who were listed by the contractor on said final claim are the same creditors who are parties to this proceeding and the amounts of their claims, as shown by the above form, are substantially the same as those proved by testimony in this case. No creditor is making claim herein who was not listed above.

11. Defendant County Judge B. C. Huddleston, and the other County officials, testified that they did not receive said final certificate of claim bearing the approval of the architect, the PWA Engineer Inspector, and the description of the creditors, as above set out. They further testified that they have never received any final certificate of any kind from the architect or the PWA Engineer Inspector.

However, it does appear that in June, 1940, Mr. H. T. Painter, who is manager of the Cookeville Sand & Gravel Company, had a conversation with Judge Huddleston relative to this particular account, told him how much was owing, and that Judge Huddleston told him that final settlement had not been made.

Also, Mr. O. D. Massa, one of the partners in the Whitson Hardware Company, talked to Judge Huddleston on the telephone in June, 1940, about the claim of his Company and wrote Judge Huddleston a letter on June 18, 1940, about this account.

Further, in August, 1940, Mr. Finis Harris, attorney of Cookeville, who represents the Cookeville Sand & Gravel Company, talked to Judge Huddleston about the account of this Company and Judge Huddleston told him that the money had not yet been received by the County.

In September, 1940, Mr. W. L. Swallows, attorney of the Cookeville Bar, spoke to Judge Huddleston and also to Marr & Holman, architects, about the claim of his client. On September 18, 1940, Judge Huddleston wrote Marr & Holman in part as follows:

"In addition the concerns of Phillips & Buttorff, the Cookeville Sand & Gravel Company and Whitson Hardware Company, and others have come to me demanding pay for materials furnished to West & Reed for the various Sub-Projects. In addition West & Reed have some time ago assigned or sold the approximate amount due them to the First National Bank here in Cookeville.

"We decline to pay out these funds until some adjustment is made as above set out."

A copy of the above letter was sent to complainant Bonding Company. Judge Huddleston again wrote the Bonding Company, with copies of his letters to the architects and to the County Superintendent of Schools, on September 26, 1940, and stated that: "We have been checking on these accounts and we find outstanding, including the First National Bank account that was transferred to them by West & Reed, the amount of $3,826.48. We only have $2,868.-56 in the Trustee's hands."

Further, on September 26, 1940, the Putnam County Attorney wrote the Bonding Company, in part: "It has come to my attention regarding the indebtedness of West & Reed for material used on jobs they contracted in Putnam County in the building of schools, and it appears at present, as far as I am able to determine, that the following accounts are outstanding" (here the letter lists the accounts of Phillips & Buttorff, Jere Whitson Hardware and the Cookeville Sand & Gravel Company and also refers to the Assignment to the Bank) " * * * as you have asked in your letter to the County Judge of Putnam County,, dated September 19th., to not pay out any of these funds, I think it my duty to ask the Trustee to not issue any more checks against the same until notified by your Company, or myself. The amount of funds now on hand in the PWA account is $2,-868.56."

Within a day or two of the date of this last letter a conference was held in Cookeville which was attended by Mr. Alfred Adams, attorney of Nashville, Mr. T. O. Morris III, attorney and adjuster for the complainant, Bonding Company, Judge Huddleston and one or more of the other county officials, and also by Mr. Clark, one of the attorneys for the First National Bank. At this conference all of the claims which have been proven in this case were itemized and brought to the attention of the conference.

Other correspondence followed between the County Attorney and the complainant, Bonding Company, in one of which dated October 15, 1940, the County Attorney stated, in part: "They (the creditors) are depending on one year's statute and also the fact that the County had actual notice of the merchandise they received."

On November 27, 1940, the County Attorney wrote the complainant Bonding Company listing all the creditors, including the Bank, and stating, in part: "We have on hand about $3,100.00 to use in clearing up same, as our part of the amount, if it should be more than that amount ........ the County is being pushed by the creditors and must make this demand of you, that you take steps to clear the matter up, you can treat this as a formal demand of you to make settlement."

Under date of November 27, 1940, complainant Bonding Company wrote defendant County Judge Huddleston by registered mail, insisting that the Assignment was invalid and insisting that the final retainage fund be applied to the payment of the claim for creditors, and that it not be paid to the First National Bank, and concluding "it will be insisted that any other disposition of these funds by the County will constitute a breach of contract for which it will be liable, together with the official, or officials who make such other disposition of the funds possible". This registered letter was signed for by defendant County Judge Huddleston on December 2, 1940.

12. On or about December 5, 1940, Judge Huddleston called a meeting of the County School Building Committee and invited two officials of the First National Bank and two attorneys for the First National Bank to attend the meeting. The County Attorney was also present. The complainant Bonding Company was not invited to the meeting and no local creditor was invited or given an opportunity to be present, although the County Judge personally knew that at least two local Cookeville attorneys represented creditors who were making a claim against said funds. At said meeting the bank officials and attorneys insisted that its Assignment should be honored and insisted upon its validity. In spite of the notice and knowledge possessed by the County, as above set out, and over the protest and against the advice of the County Attorney, the School Building Committee agreed that the County Judge should issue a voucher to the Bank in payment of its Assignment for all of the final retainage. This voucher was honored by the County Trustee on the following morning and was duly paid to said Bank. At the time of this payment by the County, according to the testimony of its officials, it still had not received any kind of a final certificate from the architect, as required by its contract.

13. It is not clear just when the Project was finally completed. However, the original Exhibits to the testimony of Mr. R. S. Reynolds show that it was accepted and ap-

proved by the PWA Resident Engineer Inspector on May 21, 1940, and the Court therefore finds that this date was the date of final completion of said Project.

14. The Court further finds that the County officials were fully informed about the method of handling payments of contractors' claims on Projects of this character and were charged with knowledge that they were required to have the claim for the final payment signed by the contractor and approved by the architect and by the PWA Engineer Inspector, upon PWA Form I–23. If the County had not breached its contract in this particular it would have received prompt and accurate notice of the existence of the very claims which are the subject matter of this litigation.

15. No creditor herein gave written notice by registered mail at any time. No creditor herein filed any suit or petition in Court until the pleadings were made up in this case; more than six months after May 21, 1940.

16. The Court finds that the following furnishers or materialmen furnished material for the construction of the school buildings in question in amounts as hereinafter set out and that said furnishers are entitled to judgment therefor:

| | |
|---|---|
| Cookeville Planing Mills | $1007.75 |
| Keith Simmons Company Inc. | $467.01 |
| Phillips-Buttorff Manufacturing Co. | $172.23 |
| Cookeville Sand & Gravel Company | $474.29 |
| Jere Whitson Hardware Company | $103.91 |
| W. G. Bush & Company | $547.27 |

### Conclusions.

1. The bond in question was a common law bond securing the furnishers against loss arising out of the project in question, and the six months' statutory limitation for filing suit and the requirement for filing notice by registered mail, as provided by Tennessee statutes, are not applicable. The furnishers who are parties to this suit are therefore entitled to judgment against the surety for the amount of their claim as proven herein.

2. The contract between the County and the contractor was made a part of the bond and the surety is entitled to the benefit of the protection afforded to it under the retainage provisions of said contract.

3. Said contract dedicates the final retainage payment as a fund for the satisfaction of claims for labor and materials, and fixes an equitable lien thereon in favor of the materialmen and the surety, before any part of said final retainage belongs to the contractor.

4. The County was authorized to pay such claims out of the final retainage, as the Agent of the contractor.

5. The County breached its contract by consenting to the Assignment, without the consent of the surety.

6. The County breached its contract by making, or agreeing to make, any payment of the final retainage, except upon the authority of the final certificate of the architect.

7. The contractor, as well as the County, breached his contract by making an assignment without the consent of the surety and the contractor could not assign to the Bank as assignee any higher right than the contractor owned. This is especially true since the Assignment itself refers to the construction contract in general terms. However, since it has been found a fact that this Assignment was as much for the benefit of the County as for the contractor, the Court finds as a conclusion of law that the liability of the Bank to the furnishers or the surety should be secondary to that of the County.

8. Decree will accordingly be entered adjudging the rights of the parties hereto as follows:

(a) The furnishers will be given judgment against the surety.

(b) The surety shall have a judgment over against the County primarily and the Bank secondarily for the amount of any such payments made to the furnishers. Execution shall issue by the Clerk of this Court in favor of the surety against the County upon payment by the surety of any such judgment into this Court for the benefit of any of the furnishers who are parties hereto.

(c) Should the execution ordered herein in favor of the surety against the County be returned nulla bona, then in that event it shall be ordered that the surety shall have a judgment over against the Bank for the amount of the surety's said judgment payment and the Clerk of this Court is directed to issue execution against the Bank therefor.

(d) Should said Bank respond by payment of any judgment payment ordered herein, it shall be ordered that it have a judgment over against the County for the amount of any such judgment payment, and it shall be entitled to have execution issued against said County therefor.

9. Interest shall be allowed to said furnishers upon their claims proven herein at the rate of six per cent from and after the 29th day of July, 1942, being the date of the hearing of this cause, at which time an oral opinion was delivered in accord with the above conclusions.

10. The County will pay the costs of this cause.